**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BENJAMIN HORTON,

                           Plaintiff,

          v.                                                    8:21-CV-983
                                                                (LEK/CFH)
SCHENECTADY COUNTY and CITY OF
SCHENECTADY POLICE DEPARTMENT,

                           Defendants.

---

**APPEARANCES:**

Benjamin Horton
16-A3539
Clinton Correctional Facility
P.O. Box 2009
Dannemora, New York 12929
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**UNITED STATES MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION & ORDER**

**I.  In Forma Pauperis**

          Plaintiff Benjamin Horton ("plaintiff'), pro se, purported to commence this action

on September 1, 2021, with the filing of a complaint and, in lieu of paying this Court's

filing fee, a motion for leave to proceed in forma pauperis ("IFP").  See Dkt. No. 1 ("Am.

Compl."); Dkt. No. 2.  Plaintiff declares he is unable to pay the filing fee and has

provided sufficient information, including a certified copy of his prisoner trust fund

account, as required (see 28 U.S.C. § 1915(a)(2)), demonstrating his entitlement to IFP

status.  See Dkt. No. 2.  Thus, plaintiff's IFP application is granted insofar as exempting

him from the filing fee requirement.[1]


## II.  Initial Review

### A.  Legal Standard

In addition to determining whether plaintiff qualifies for IFP status, the Court must

consider the sufficiency of the complaint's allegations pursuant to the standards set

forth in Title 28 of the United States Code, Section 1915 ("Section 1915").  Section 1915

directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at

any time if the court determines that  . . . the action or appeal (i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  It is a

court's responsibility to determine that a plaintiff may properly maintain the complaint

before permitting him to proceed with an action.  See id.

Where, as here, the plaintiff acts pro se, "the court must construe his

submissions liberally and interpret them to raise the strongest arguments that they

suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam)

(internal quotation marks omitted).  A pro se litigant's pleadings are held to a less

stringent standard than those drafted by an attorney.  See Fed. Express Corp. v.

Holowecki, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se

litigants are held to a lesser pleading standard than other parties.").  However, this

---

[1] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

"does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citations omitted).

Pursuant to the standards set forth in Federal Rule of Civil Procedure ("Fed. R. Civ. P."), 8, a pleading must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought . . . ." FED. R. CIV. P. 8(a).

Although "[n]o technical form is required," the rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d). Further, Rule 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."

Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.  Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).  A complaint that fails to comply with pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995)

### B. Complaint[2]

Plaintiff seeks to bring this action for purported violations of his federal and state constitutional rights.[3]  See Am. Compl. at 1.  Plaintiff alleges that defendants violated his Miranda rights "more then [sic] 10 times, violating United States federal constitutional rights, [and] violating New York State constitutional rights and criminal procedure laws."  Id.; see also Miranda v. Arizona, 384 U.S. 436 (1966).  More specifically, plaintiff asserts "Detective McCabe with Schenectady City Police and a [sic] investigator Jason DeLuca from the State Police came to Salisbury Center NY and detained [plaintiff] for two hours in a car and would not let [plaintiff] meet them there after he dropped off his seven pets at his moms."  Am. Compl. at 1-2.  Plaintiff adds that the men "verbally force[d]" him to ride in the car and that when he asked, "am I under arrest?" they responded, "no."  Id. at 2.  Plaintiff contends that without being under arrest or having his Miranda rights read to him, and "not able to go anywhere," he was "illegally detained."  Id.  He asserts further that the "car was speeding down the thruway violating federal and state constitutional rights"; that he was "in custody illegally" at the time as "the doors were lock[ed]"; and that this lasted "for a little over two hours" and

---

[2] Because of plaintiff's pro se status, the undersigned has considered the allegations in the complaint along with the documents attached thereto.  See Anthony v. Murphy, No. 5:15-CV-00450 (DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and amended/supplemental complaints upon its initial review."), report and recommendation adopted, No. 5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

[3] In August 2021, plaintiff filed a civil rights complaint purporting to assert the same causes of action against the same presently named parties.  See Dkt. No. 4; see also Horton v. Schenectady County, No. 1:21-cv-879 (LEK/CFH), Dkt. No. 4.  That matter was administratively closed due to plaintiff's failure to submit a completed inmate authorization form.  See Dkt. No. 4.  On September 1, 2021, plaintiff filed the present complaint, which is nearly identical to the complaint in the earlier action, under the instant civil action number.  See Dkt. Nos. 1, 6.  Due to his pro se status, this Court consolidated the cases and deemed the present complaint as an amended complaint.  See Dkt. Nos. 1, 4.

"three hours before" the officers "finally read [to him] his <u>Miranda</u> rights[.]"  <u>Id.</u>  He clarifies that both officers were "in the room" when the rights were read to him.  <u>Id.</u>

Furthermore, when Detective McCabe said that plaintiff had a right to an attorney, plaintiff "right away" said, "I have a right to an attorney and I want one!"  Am. Compl. at 2.  He was "[i]n custody" and "invoked the right to counsel," asking for a lawyer, "immediately and at least five times after that."  <u>Id.</u> at 2.  Plaintiff contends that he "then could not thereafter change his mind and speak to the officers without counsel being present[.]"  <u>Id.</u> at 2-3.  Plaintiff adds that "[t]hey didn't stop and get [plaintiff] an attorney or so [plaintiff] could get one they kept and forced [plaintiff] to be interrogated and [plaintiff] asked for many times violating [plaintiff's] rights like <u>Miranda</u>. . . ."  <u>Id.</u>  For his contentions, plaintiff cites various New York State decisional and statutory authorities.  <u>Id.</u> at 2-4.

Plaintiff claims that defendants violated his <u>Miranda</u> rights, the Fifth, Sixth, Ninth and Fourteenth Amendments, and the "state constitution[.]"  Am. Compl. at 3.  He says, "upon information and belief," that "[s]aid statements were involun[t]arily made by [plaintiff] within meaning of Section 60.45 Criminal Procedure laws and were obtained in violation of [plaintiff's] rights under the constitutions of state and federal[.]"  <u>Id.</u> Moreover, plaintiff claims the statements were involuntarily made under the "Due Process Clause" as well as in violation of "criminal procedure law 60.45(2)(b)(i)." <u>Id.</u>Plaintiff asserts that defendants' "procedure" denied him "a lawyer and medical as [plaintiff] told the officers he was confused and had memory issues, and they just kept yelling at the [him]."  Am. Compl. at 3.  In total, plaintiff seeks "$6,500,000" in unspecified damages.  <u>Id.</u>

Included with plaintiff's complaint is a single page excerpt from a Schenectady County Court Decision and Order, which shows the caption title for plaintiff's criminal case: The People of the State of New York v. Benjamin Horton, Indictment No. A-815-13. See Am. Compl. at 8. Also included are three pages of a February 8, 2016, Report-Recommendation signed by Judicial Hearing Officer Michael C. Eidens. Id. at 5-7. The latter document appears to have been issued following a motion to suppress filed on plaintiff's behalf. Id. However, the full extent of the report-recommendation was not submitted with the complaint and it is unclear whether the it was ultimately adopted, either in whole or in part.

According to the relevant portions of Judicial Hearing Officer Eiden's findings:

The officers drove to Herkimer, a considerable distance and travel time from Schenectady to pick up [plaintiff], and then told him that they wanted to take him back to Schenectady to speak with him. They did not call him and ask him to come to Schenectady to meet with them, nor was there any evidence that Mr. Horton knew the officers were coming before they arrived in Herkimer. If the officers wanted to ask [plaintiff] a few questions and the matter was minor, it would have been reasonable for them to simply speak briefly with Mr. Horton at the house in Herkimer. Since [plaintiff] got in the police car and McCabe drove the three of them to Schenectady [plaintiff] at that point had no choice but to accompany them. The clear inference for someone in Mr. Horton's position is that he was not free to refuse to go with the officers, and that once he got in the car, he had no alternative but to go where they took him. Before they left Herkimer, Mr. Horton may have asked if he could drive and the officers said no, which if true, would further suggest that he was not free to refuse to go with the officers.

Mr. Horton [plaintiff] did not come to the Schenectady Police Station voluntarily on his own. The interview could have occurred in Herkimer, but instead the police, without contacting [plaintiff] in advance, drove to Herkimer and told him they needed to speak with him and asked him to come with them to the Schenectady Police Department. The interview occurred in a location remote from Herkimer, and it is clear that [plaintiff's] freedom of movement was restricted (People v. Balint, supra; People v. Centatno, supra). Clearly, a reasonable and innocent person in [plaintiff's] position, under these circumstances, would not feel free to refuse to

7

accompany the police.  Once he got into the police car and they left
Herkimer, he was not free to leave.[4]  The interview occurred in a police
station and began with Detective McCabe telling Mr. Horton that they had
to read him rights (People v. Oates, supra).

Based on the foregoing, Mr. Horton was in custody when he was
questioned by the officers.

Am. Compl. at 5-6.  Judicial Hearing Officer Eidens stated further that "[a]t the beginning

of the interview, Detective McCabe told the defendant that he had to read him his rights.

[Plaintiff] responded 'I have a right to a lawyer.  I want one." Id. at 6.  Plaintiff also

purportedly said "If this is really bad or serious, I want an attorney" and that he "wanted

to call a friend to help him get a lawyer." Id.  Judicial Hearing Officer Eidens found that

plaintiff "unequivocally asserted his right to counsel," and that he "should not thereafter

have been questioned without an attorney present." Id.  at 7.  Judicial Hearing Officer

Eidens concluded that "[plaintiff's] motion to suppress the oral statements to Investigator

DeLuca and Detective McCabe resulting from the custodial questioning on May 21,

2015 is granted."[5] Id.


### C.  Plaintiff's Pending Habeas Corpus Petitions

Plaintiff has two habeas corpus petitions pending currently before this Court.

The first proceeding, Horton v. Bell I, was commenced on November 30, 2020, and

seeks federal habeas corpus relief for his conviction rendered following a jury trial in

---

[4] "Although the specific mention of [plaintiff] walking out of the interview room was not made until later in
the interview, the fact that [plaintiff] was not free to leave was confirmed when, several times, Investigator
DeLuca asked [plaintiff] to be honest with him and that he would like to be able to let [plaintiff] 'walk out of
here.'  In response, [plaintiff] many times said all he wanted to do was to be able to go home, and that he
was being honest with the officers."  Am. Compl. at 6 nt. 1.
[5] Notably, Judicial Hearing Officer Eidens' findings also reference a "controlled meeting" with plaintiff on
May 12, 2015, and a "controlled phone call" on May 11, 2015, all occurring apparently prior to the May 21,
2015, incident.  See Am. Compl. at 5.  Judicial Hearing Officer Eidens recommended denying
suppression of any statements obtained from plaintiff during those interactions.  Id.

Schenectady County Court for "two counts of predatory sexual assault against a child." See No. 9:20-CV-01461 (GTS), Dkt. No. 1. at 1-2 ("Horton I"). Notably, Horton I shares the same criminal indictment number (A-815-13) reflected in the single page decision excerpt included with his complaint. See Am. Compl. at 8; Horton I at Dkt. No. 1 at 1. The second proceeding, Horton v. Bell II, brought on March 8, 2021, stems from plaintiff's conviction for what he describes as "sexual abuse" by guilty plea in Saratoga County Court.[6] See No. 9:21-CV-262 (GLS/ATB), Dkt. No. 1. at 1 ("Horton II").

## D.  Analysis

In light of plaintiff's pro se status, the undersigned has liberally construed the complaint's allegations, identifying the strongest arguments raised therein. While he does not reference the specific statute, the Court finds that Title 28 of the United States Code, Section 1983 ("Section 1983") is the appropriate mechanism for the relief sought. See Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (noting that Section 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and the laws' of the United States."). On the whole, plaintiff purports to assert violations of his federal constitutional rights, including specific claims relative to Miranda rights, false arrest or imprisonment, and Monell municipal liability. Additionally, plaintiff seeks relief for violations of the New York State constitution and criminal procedure laws.

---

[6] Based on this Court's review, after commencing Horton I, but prior to Horton II, it appears plaintiff brought a another proceeding regarding his conviction in Saratoga County Court for "Criminal Sexual Acts First Degree." See No. 9:20-CV-1573 (TJM), Dkt. No. 1. That case was dismissed without prejudice to renew due to plaintiff's failure to exhaust his administrative remedies. Id. at Dkt. No. 7. The habeas request in that action appears identical to that of Horton II. By all indications, following his exhaustion of remedies, instead of renewing the claim using the same Civil Action Number, plaintiff commenced Horton II under a separate action number.

### 1. Statute of Limitations

Although the statute of limitations is an affirmative defense, when the face of the complaint reveals that a claim is barred by the applicable time limitations, dismissal for failure to state a claim upon Section 1915 review is appropriate.  See Pino v. Ryan, 49 F.3d 51, 54 (2d Cir. 1995).  "In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions[.]'"  Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (quoting Owens v. Okure, 488 U.S. 235, 249-50 (1989) (alterations in original)).  In New York, personal injury actions "must be commenced within three years."  N.Y. C.P.L.R. § 214(5); see also Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997).  Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim.  Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013) (citing Pearl, 296 F.3d at 80 (internal quotation marks and citations omitted)).

Plaintiff alleges that his rights were violated on May 21, 2015, when defendants held him in "custody illegally" and questioned him without the presence of a lawyer, despite his repeated request for counsel.  Am. Compl. at 2, 7.  Plaintiff had three years to bring a Section 1983 action challenging these alleged constitutional deprivations; thus, had until May 2018 to commence suit.  See N.Y. C.P.L.R. § 214(5).  As such, plaintiff's Section 1983 claims are time-barred because he did not bring this action until August 2021—over six years after the complained of conduct occurred.  See Am. Compl.

### 2. **Heck** Preclusion

Through this action plaintiff challenges allegedly unlawful acts committed by police officials involved in a criminal investigation that led to his conviction in Schenectady County Court.  See generally Am. Compl.  However, a civil lawsuit may not be used to collaterally attack an existing criminal conviction.  See Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court of the United States held that a Section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate an extant criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal or called into question by a federal habeas corpus court.  See id. at 486-87.

Plaintiff's criminal conviction, to date, remains intact.  See Horton I at Dkt. No. 70. As such, because the conviction has not been overturned by a state appellate court or called into question by a federal habeas corpus proceeding, plaintiff may not bring any claims that, if resolved in his favor, would necessarily invalidate the conviction.  See, e.g., Lewis v. Donahue, No. 3:04-CV-01452 (TJM), 2006 WL 1555617, at *2 (N.D.N.Y. Jun. 6, 2006) (dismissing complaint where "[a] judgment upholding [p]laintiff's claim of false arrest and false imprisonment or malicious prosecution would imply the invalidity of his conviction."); Johnson v. Suffolk Cnty., No. 11-CV-2481 (LDH/SIL), 2021 WL 1163021, at *3 (E.D.N.Y. Mar. 26, 2021) (collecting cases) (dismissing claims concerning Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel where "were [the p]laintiff to prevail on those claims, the validity of his underlying conviction would be called into question."); Zarro v. Spitzer, 274 F. App'x 31,

35-36 (2d Cir. 2008) (summary order) (affirming dismissal of claims which "raise[d] questions about [the p]laintiff's Sixth Amendment right to counsel . . .[and would] implicate the validity of his conviction.").

While it does not appear that plaintiff is challenging his current conviction or sentence through this action, in the event he were to challenge same, prior to a favorable resolution of Horton I, such a claim would unequivocally be barred by the Heck doctrine due to his extant conviction.  See Livingston v. Henderson, No. 7:15-CV-631 (TWD), 2019 WL 1427689, at *9 (N.D.N.Y. Mar. 29, 2019) (collecting cases) (discussing that "courts routinely dismiss § 1983 claims that implicate the validity of the prisoner's conviction or sentence when he has failed to demonstrate that his conviction was favorably terminated").  To be clear, the Court is not making a determination in this respect as plaintiff does not appear to be challenging his current imprisonment; rather, the issue is noted herein for clarity's sake in the event plaintiff attempts to bring a subsequent action, assuming a favorable outcome of Horton I.[7]

### 3.  Section 1983 – Miranda Rights Violation

Although the undersigned concludes that plaintiff's Section 1983 claims are barred by the statute of limitations, in any event, his purported Section 1983 claim for a Miranda rights violation is not actionable.  Plaintiff's complaint appears to assert

---

[7] The Court notes that, while Horton I and Horton II concern separate convictions, they appear to involve a series or chain of interrelated conduct, with some criminal acts taking place in Schenectady County and others in Saratoga County.  See Horton 1 at Dkt. No. 1; Horton II at Dkt. No. 1.  That said, plaintiff should be mindful that unless both of his habeas corpus petitions are successful, it is conceivable that any putative claims will remain Heck-barred, even if one of his convictions is sufficiently overturned, considering the evidence obtained in both criminal cases was apparently derived from a single, joint investigation involving multiple law enforcement agencies (i.e., Schenectady Police and State Police). See Am. Compl. at 1, 5-7.

violations of his Fifth Amendment right against self-incrimination in connection with his Sixth Amendment right to counsel.  See Am. Compl. at 2-7.  Specifically, he claims defendants violated "Miranda rights."  Id.  However, a plaintiff cannot sustain a Section 1983 action on this basis because "*Miranda* warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment."  Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir. 1995) (per curiam).  Rather, "[t]he remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements."  Id.  "The remedy is not at § 1983 action."  Id.; see also Lynch v. City of Little Falls, No. 6:20-CV-604 (LEK/ATB), 2022 WL 768675, at *2 (N.D.N.Y. Mar. 14, 2022) (granting partial summary judgment "to the extent [the p]laintiff has attempted to assert a Section 1983 claim based on [the Trooper defendants'] failure to provide a Miranda warning").

For the purposes of intialreview, the Court accepts as true that Detective McCabe and Investigator Deluca drove to Herkimer, New York, which is a considerable distance and travel time from Schenectady to pick up plaintiff without any advance notice.  See Am. Compl. at 5.  Upon meeting plaintiff, the officers directed plaintiff to get in their car as they wanted to take him back to Schenectady for an interview.  Id.  The Court accepts that plaintiff had no choice but to accompany them and that "the clear inference for someone in Mr. Horton's position is that he was not free to refuse to go with the officers[.]"  Id.  Likewise, the Court accepts the contention that plaintiff "unequivocally invoked his right to counsel" and that, even if he retracted his assertion, waiving his Miranda rights and opting to continue the interview, any incriminating statements elicited thereafter were improperly obtained.  Id. at 5-7.

Plaintiff cannot maintain an action based on a purported violation of his <u>Miranda</u> rights as the proper remedy for such conduct is the exclusion of evidence during the underlying criminal proceeding.  <u>See</u> <u>Neighbour</u>, 68 F.3d at 1510.  In fact, plaintiff's complaint reveals that he may have been successful in doing just that as the report-recommendation, while unclear as to whether it was ultimately adopted, shows that plaintiff's incriminating statements elicited while he was in custody on May 21, 2015, were suppressed.  <u>See</u> Am. Compl. at 5-7.  Notwithstanding the fact that his Section 1983 claims are barred by the three-year statute of limitations, plaintiff's purported claim for <u>Miranda</u> rights violations is not actionable; thus, his complaint fails to state a claim for which relief can be granted.

### 4. Section 1983 – False Arrest and False Imprisonment

The undersigned construes plaintiff's complaint as attempting to allege a Section 1983 claim for false arrest or imprisonment in violation of his Fourth Amendment rights. "A claim for false arrest, detention or imprisonment is evaluated pursuant to the Fourth Amendment right to be free from unreasonable searches and seizures."  <u>Waldron v. Milana</u>, No. 5:10-CV-0065 (NPM-DEP), 2012 WL 3929898, at *6 (N.D.N.Y. Sept. 10, 2012) (citations omitted) <u>affirmed</u> <u>by</u> 541 F. App'x. 5 (2d Cir. 2013).  Claims for false arrest and false imprisonment are "synonymous" under New York law, and both are "substantially the same as a 1983 claim for false arrest."  <u>Hulett v. City of Syracuse</u>, 253 F. Supp. 3d 462 (N.D.N.Y. 2017) (citing <u>Jackson v. N.Y.C.</u>, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013)).  To establish a claim of false arrest, detention or imprisonment, the plaintiff must show that: "(1) the defendant intended to confine him, (2) the plaintiff was

conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (citing Broughton v. State, 37 N.Y.2d 415 (1975)).

"The general rule is that 'Fourth Amendment seizures are 'reasonable' only if based on probable cause' to believe that the individual has committed a crime." Mayes v. Village of Hoosick Falls, 162 F. Supp. 3d 67, 86 (N.D.N.Y. 2016) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)). A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). In the Second Circuit, a false arrest claim accrues "when 'the victim becomes held pursuant to legal process'" and the alleged false imprisonment ends. Lynch v. Suffolk Cnty. Police Dept., Inc., 348 F. App'x 672, 675 (2d Cir. 2009) (quoting Wallace v. Kato, 549 U.S. 384, 388-89 (2007)).

Notably, even where there exists an underlying criminal conviction, under certain circumstances a false arrest claim may proceed without running afoul of the Heck doctrine. See Covington v. City of N.Y., 171 F.3d 117, 123 (2d Cir. 1999) (citing Washington v. Summerville, 127 F.3d 552, 556 (7th Cir. 1997) ("A wrongful arrest claim, like many Fourth Amendment claims, does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction."). For example, "[s]uch a case might arise if there were independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest." Covington, 171 F.3d at 123. "On the other hand, in a case where

15

the *only* evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction[.]"   Id.

In this case, plaintiff alleges he was "illegally detained" by two police officers "in a locked car speeding down the thruway," for "a little over two hours" and three hours before his Miranda rights were read to him.   Am. Compl. at 2.  It is unclear from the pleadings whether plaintiff's false arrest and imprisonment claim is barred by the Heck doctrine because there is no indication of what evidence, if any, defendants obtained from plaintiff on May 21, 2015, and whether same was necessary in securing plaintiff's current conviction.  For instance, it is unclear whether plaintiff was released that same day or whether he was arrested on a later date after further investigation.  Id. at 5-7.  In fact, it appears the investigation was not yet complete as Detective McCabe and Investigator DeLuca sought to interview plaintiff at the Schenectady Police Station, presumably seeking additional information to build their case upon.  Id.

Moreover, based on Judicial Hearing Officer Eidens' recommendation to suppress improperly obtained statements, there is a strong likelihood that plaintiff's May 21, 2015, custodial detention was not necessary to his conviction.  See Am. Compl. at 7.  It is also apparent from the facts that police officers were monitoring plaintiff on May 11 and 12, 2015, further suggesting the evidence necessary for his conviction was obtained independently.  See Am. Compl. at 5.  Accordingly, it is unclear whether Heck bars plaintiff's false arrest or imprisonment claims.

Nevertheless, the report-recommendation included with plaintiff's complaint indicates that his alleged false imprisonment occurred approximately six years prior to commencing the instant action.  See Am. Compl. at 7.  Further, plaintiff alleges he was

16

"in custody illegally" for only "a little over two hours and three hours before they finally read [him] his Miranda rights." Id. at 2.  By all indications, plaintiff's alleged unlawful imprisonment started and ended on or about May 21, 2015, thus rendering it time-barred by the three-year statute of limitations governing Section 1983 actions.

### 5.  Section 1983 – Monell

Plaintiff has named two municipal entities, "Schenectady County" and "City of Schenectady Police Department," as the only defendants in this action.  Am. Compl. at 1.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  A municipality may only be named as a defendant in certain circumstances.  In Monell v. Dept. of Soc. Servs., the Supreme Court of the United States set forth the limited circumstances under which a municipality may be liable under Section 1983.  See 436 U.S. 658 (1978).  For instance, a municipality may not be liable solely or vicariously because it employs a tortfeasor.  See Los Angeles Cnty. v. Humphries, 562 U.S. 29, 35 (2010).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, may it be liable for damages.  See Monell, 436 U.S. at 694.

Under Monell and its progeny, a claim for municipal liability requires a showing that: "(1) the actions were taken under the color of law, (2) there was a deprivation of a constitutional or statutory right, (3) causation, (4) damage, and (5) that an official policy of the municipality caused the constitutional injury." Jackson v. City of Syracuse, No.

17

5:20-CV-1215 (GTS/ML), 2021 WL 3710494, at *6 (N.D.N.Y. Aug. 20, 2021) (citing Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. at 690-91)); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986).  An "official policy" includes the decisions and acts of a government's lawmakers and policymaking officials, as well as customs and practices that are so widespread as to "practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).  The plaintiff cannot simply allege the existence of a policy or custom without alleging facts supporting, at least circumstantially, that such a practice exists.  Dwares v. City of N.Y.., 985 F.2d 94, 100 (2d Cir. 1993), overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).

Plaintiff has failed to set forth facts plausibly suggesting Monell liability as to Schenectady County and the City of Schenectady Police Department.  The alleged wrongdoing is directed primarily at the actions of "Detective McCabe" and "Investigator DeLuca," individual actors not named as defendants. Am. Compl. at 1-4.  However, at one point in his complaint, plaintiff references a "procedure" that purportedly "denied him a lawyer and medical as [plaintiff] told the officers he was confused and had memory issues, and they just kept yelling at the defendant." Id. at 3.   In deference to plaintiff's pro se status, it appears that plaintiff is alleging a policy, custom or practice resulted in his alleged constitutional harm.  See id. Nonetheless, he has failed to allege facts showing that this purported "procedure" is sufficiently widespread to be actionable under Monell.  See Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) (holding that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an

18

existing, unconstitutional municipal policy. . . .").  If anything, plaintiff's May 21, 2015, arrest and/or imprisonment was a single, isolated incident directed only at him, which cannot be read as being sufficiently widespread for <u>Monell</u> purposes.  <u>See</u> <u>id.;</u> see also <u>Am. Compl.</u>

Considering a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents, nor can a policy, custom, or practice arise from a single instance of alleged unconstitutional conduct by a municipal actor who is not a policymaker, plaintiff has failed to state a cause of action against Schenectady County or the City of Schenectady Police Department.  Accordingly, it is recommended that plaintiff's claims be dismissed.  <u>See</u> <u>Tuttle</u>, 471 U.S. at 824.

### 6. Unspecified Constitutional Claims

Insofar as plaintiff generally references unspecified violations of his constitutional rights, particularly his references to the "Ninth" and "Fourteenth" Amendments (Am. Compl. at 3), such claims must be dismissed.  It is well settled that "simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction." <u>Perpetual Sec., Inc. v. Tang</u>, 290 F.3d 132, 137 (2d Cir. 2002) (citation omitted).

First, the Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage other retained by the people." <u>U.S. CONST. amend. IX</u>.  Plaintiff has not plead facts related to a purported Ninth Amendment violation.  <u>See</u> <u>generally</u> Am. Compl.  Therefore, to the extent that the complaint seeks to raise a claim for a violation of any unspecified Ninth Amendment right, such claim must be dismissed.

Secondly, the undersigned notes that, at one point in his complaint, plaintiff alleges "statement[s] were involuntarily [sic] under the Due Process Clause as well as in violation of criminal procedure law 60.45(2)(b)(i)."  Am. Compl. at 3.  While violations of constitutionally protected due process rights may be actionable under Section 1983 vis-à-vis the Fourteenth Amendment, the allegedly unlawful acts by defendants are the same as those underpinning his putative Miranda rights claim—namely, that Detective McCabe and Investigator DeLuca elicited incriminating statements without first advising him of his rights to remain silent and have counsel present.  See Am. Compl. at 1-3.  As previously explained, an action for a Miranda rights violation is not permissible under Section 1983 and, even if it were, such a claim would be time-barred by the three-year statute of limitations.  As such, plaintiff's complaint must be dismissed.  See Neighbour, at 68 F.3d at 1510.

### 7.  Pendent State Law Claims

A federal court is authorized to decline supplemental jurisdiction over a state law claim if all of the claims over which the court had original jurisdiction were dismissed pursuant to Title 28 of the United States Code, Section 1367.  See 28 U.S.C. § 1367(c).

Plaintiff contends that defendants violated his rights under the New York constitution and various state criminal procedure laws.  See Am. Compl. at 1, 3-4.  However, the New York State Court of Appeals has held that the notice of claim provisions of General Municipal Law § 50-i are applicable to state law torts, including "constitutional torts" in violation of the state constitution.   Pratt v. Indian River Cent. Sch. Dist., 803 F. Supp.2 d 135, (N.D.N.Y. 2011) (citing 423 S. Salina Street, Inc. v. City

of Syracuse, 68 N.Y.2d 474, 489 n. 5 (1986), cert. denied, 481 U.S. 1008 (1987)).

Under New York General Municipal Law § 50-e, a claimant has 90 days from the date of

the alleged wrongdoing to serve a notice of claim upon the respondent.  A notice of

claim is a condition precedent to commencing an action.  See Davidson v. Bronx, 64

N.Y.2d 59, 61 (1984).  After serving the notice of claim, the claimant then has one year

and 90 days to commence an action.  See N.Y. Gen. Mun. L. § 50-i(1).  At the pleading

stage, a plaintiff must affirmatively plead compliance with the notice of claim condition

precedent.  See Davidson, 64 N.Y.2d at 61-62.

From the face the complaint, there is no indication that plaintiff complied with the

notice of claim requirements.  See Am. Compl.  Thus, because plaintiff did not file this

action until August 4, 2021 (see No. 1:21-CV-879 (LEF/CFH) at Dkt. No. 1), the statute

of limitations for his state constitutional law claims must be dismissed as time-barred.

See Baker v. Cnty. of Clinton, No. 1:08-CV-1252 (LEK/DRH), 2010 WL 2516467, at *4

(N.D.N.Y. Jun. 14, 2020) affirmed by 2011 WL 5515971 (2d Cir. Nov. 14, 2011).

### III. Opportunity to Amend

Generally, "[a] *pro* se complaint should not be dismissed without the Court

granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated."  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir.

2014) (citation omitted).  Given that plaintiff cannot cure the defects in his claims, as the

statutes of limitations are expired, wholly independent from the fact that his conviction

remains valid, it is recommended that his claims be dismissed with prejudice.  See, e.g.,

Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (concluding that an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."); Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiffs in forma pauperis application (Dkt. No. 2) be **GRANTED** for the purpose of filing; and it is further

**RECOMMENDED**, that plaintiff's complaint's (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** and without opportunity to amend;

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[8]

---

[8] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal

Dated: April 22, 2022
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(c).