**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

BENJAMIN HORTON,

                          Plaintiff,

       v.

SCHENECTADY COUNTY, et al.,

                        Defendants.

No. 8:21-CV-983
(LEK/CFH)

───────────────────────────────

**APPEARANCES:**

Benjamin Horton
16-A-3539
Clinton Correctional Facility
P.O. Box 2000
Dannemora, New York 12929
Plaintiff pro se

## REPORT-RECOMMENDATION AND ORDER

### I. Procedural Background

Plaintiff pro se Benjamin Horton ("plaintiff") commenced an action against Schenectady County and the Schenectady City Police Department on August 4, 2021, by filing a complaint. See Horton v. Schenectady County, et al., No. 1:21-CV-879 (LEK/CFH), Dkt. No. 1. Plaintiff commenced the above-captioned action against Schenectady County, City of Schenectady Police Department, Detective Joseph[1] McCabe, and Investigator Jason DeLuca on September 1, 2021, by filing a complaint. See Dkt. No. 1. On September 7, 2021, the Court consolidated the two cases,

---

[1] In his original complaint, plaintiff named "Detective McCabe." Dkt. No. 1 at 1. In his Amended Complaint, he names "Detective Joseph McCabe." Dkt. No. 14 at 2. The Clerk of the Court is respectfully ordered to amend the case caption accordingly.

construed the complaint filed on September 1, 2021, as an amended complaint, and

ordered that all future pleadings and papers be filed in the above-captioned case. <u>See</u>

Dkt. No. 4.  The undersigned subsequently reviewed plaintiff's complaint and

recommended that the complaint be dismissed with prejudice and without opportunity to

amend. <u>See</u> Dkt. No. 7.  Plaintiff filed objections. <u>See</u> Dkt. No. 8.  Senior District Judge

Lawrence Kahn modified in part, rejected in part, and adopted in part, the undersigned's

Report-Recommendation and Order. <u>See</u> Dkt. No. 10.  In doing so, Judge Kahn

permitted certain claims to proceed past initial review and dismissed all other claims

without prejudice. <u>See</u> <u>id.</u> at 20.[2]  Plaintiff subsequently filed an amended complaint

which was referred to the undersigned for review. <u>See</u> Dkt. No. 14 ("Am. Compl."); Dkt.

No. 15.  Thus, presently before the Court is plaintiff's Amended Complaint for review

pursuant to 28 U.S.C. §§ 1915A and 1915(e). <u>See</u> Am. Compl.[3]


## II. Initial Review of Amended Complaint

### A. Legal Standard

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff

seeks to proceed IFP, "the court shall dismiss the case at any time if the court

determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a

claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

---

[2] Citations are the pagination generated by CM/ECF in the header of each page.

[3] On September 7, 2021, the Court ordered that the plaintiff's complaint be construed as an amended complaint. <u>See</u> Dkt. No. 4.  In performing an initial review, the undersigned referred to it as the "complaint." <u>See</u> Dkt. No. 7.  Thus, although plaintiff's currently pending pleading would technically be a second amended complaint, to maintain the language used in the undersigned's Report-Recommendation and Order and Judge Kahn's Memorandum-Decision and Order, the pleading will be referred to as an Amended Complaint. <u>See</u> Dkt. Nos. 7, 10.

who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

Where, as here, the "plaintiff proceeds pro se, the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean that the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Pro se litigants are "not exempt . . . from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair

notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (citations and internal quotation marks omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought . . . ." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (citations and internal quotation marks omitted). A complaint that fails to comply with the pleading requirements "presents far too [] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal citation omitted). However, "[d]ismissal [] is usually reserved for

those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Amended Complaint

Plaintiff alleges that "a felony complaint was filed [o]n April 25, 2015[,] and in Schenectady County on May 9, 2015." Am. Compl. at 2. On May 21, 2015, individual defendants Detective Joseph McCabe and State Police Investigator Jason DeLuca went to plaintiff's home in Salisbury Center, New York, to ask him questions. See id. Plaintiff told the officers he needed to drop his dog off at his parents' house and that he would meet them at the police station to answer their questions. See id. at 2-3. The officers told plaintiff he could not do that but that he was not under arrest. See id. at 3. They forced plaintiff to get into their car "not by physical force[] but still forced they made [him] get in [he] had no choice." Id. He was in their car for over two hours, the doors were locked, and he could not get out. See id. at 3-4. When they arrived at the Schenectady City police station, plaintiff was placed in a room by himself for twenty to thirty minutes. See id. at 4. The officers then read plaintiff his Miranda[4] rights. See id. Plaintiff requested an attorney numerous times, but "[t]hey started yelling, intimidating, and manipulating" him. Id. at 4-5.

Plaintiff was arraigned "[i]n city police court" and was appointed a public defender on May 22, 2015. See Am. Compl. at 6. Because of conflicts of interest, plaintiff was

---

[4] Miranda v. Arizona, 384 U.S. 436 (1996).

appointed three different public defenders and was later assigned a private attorney. See id. Plaintiff did not have an attorney for "almost two months." Id. Plaintiff asserts that the case did not go before a grand jury to obtain an indictment and it was transferred to county court. See id. at 7.

Plaintiff contends that the government did not turn over certain evidence to plaintiff or his counsel such as witnesses' criminal records and the victim's psychiatric record. See Am. Compl. at 7. He also asserts that the government did not disclose an affidavit which verified that witnesses lied to the police, District Attorney, and the county court. See id. at 8. Plaintiff alleges that no physical evidence was presented at trial which was insufficient to warrant a conviction. See id. at 8-9. He then mentions a "controlled call/meeting" between Schenectady City Police and a witness. Id. at 9, 12.

Plaintiff asserts that there were "lots of court errors."[5]  Am. Compl. at 12. He states that a juror had contact with the victim's family in the hallway of the courthouse, and another juror's mother-in-law was a "court attendant" with whom the juror had lunch. Id. Finally, plaintiff states that the county court improperly allowed plaintiff's text messages and pictures into evidence and failed to dismiss the case despite the government not meeting its burden of proof. See id. at 12-13.

Plaintiff alleges violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights and corresponding state laws and requests "$10,000 from each person that violated these." Am. Compl. at 13.

---

[5] Plaintiff does not specify what court made the alleged errors. See Am. Compl. at 12. It is likely that he is referring to the Schenectady County Court as his case in Saratoga County did not proceed to trial. See People v. Horton, 102 N.Y.S.3d 761 (2019); see also People v. Horton, 104 N.Y. S.3d 363 (2019).

### III.  Analysis of Claims

### A.  Claims Permitted to Proceed

Judge Kahn accepted the following claims for filing and permitted them to proceed beyond initial review: Fourteenth Amendment Due Process actual coercion claims and Fourth Amendment false arrest and false imprisonment claims against McCabe and DeLuca pursuant to 42 U.S.C. § 1983; and pendent state law claims against McCabe, DeLuca, Schenectady County, and the City of Schenectady Police Department.  See Dkt. No. 10 at 20.  Plaintiff has realleged facts concerning these claims in his Amended Complaint.  See generally Am. Compl.  Thus, it is recommended that those claims proceed.

### B.  City of Schenectady Police Department

Plaintiff named the City of Schenectady Police Department in his initial complaint. See Dkt. No. 1 at 1.  Judge Kahn permitted pendent state law claims against the City of Schenectady Police Department to proceed beyond initial review.  See Dkt. No. 10 at 18, n.7.  Plaintiff does not rename the police department as a defendant in his Amended Complaint.  See Am. Compl. at 1.

Rule 10 states that "[t]he title of the complaint must name all the parties[.]"  FED. R. CIV. P. 10(a).  Judge Kahn's Memorandum-Decision and Order also set forth, "[a]ny amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that Plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised."  Dkt. No. 10 at 20, n.11.  "The caption alone . . . 'is normally not determinative of the identity of the parties or of the pleader's statement of claim.'"

Cooper v. Trustees of Coll. of Holy Cross, No. 13-CV-8064 (KPF), 2014 WL 2738545, at *6 (S.D.N.Y. June 17, 2014) (citation omitted). "Rather, '[t]he caption, pleadings, service of process and other indications of the intent of the pleader, are evidence upon which a district court will decide, in cases of doubt, whether an entity has properly been made a party to a lawsuit.'" Id. (citation omitted).

In plaintiff's Amended Complaint, he refers to defendant Joseph McCabe as a "detective" and defendant Jason Deluca as a "State Police investigator." Am. Compl. at 2. He does not state what institution defendant McCabe works for. He alleges that defendants took him to the Schenectady City police station and that a "controlled call/meeting" was scheduled by the Schenectady City Police "with a witness." Id. at 4, 9. Plaintiff alleges that the "controlled call/meeting" "was also [e]ntrapment" because it was organized by the Schenectady City Police. Id. at 9. Plaintiff ends his Amended Complaint by stating that his "case was unfair[,] unconstitutional[,] and violated legal rights that started with Detective Joseph McCabe and Investigator Jason DeLuca, then the city courts, district attorney and others." Id. at 13. It is unclear whether plaintiff wished to rename the City of Schenectady Police Department as a defendant in his Amended Complaint because it is not listed in the case caption, there is only one allegation related to the department in the Amended Complaint, and plaintiff does not include the department in the list at the end of his Amended Complaint—though, it could be a part of the "others." Id. at 1, 9, 13.

Regardless, insofar as plaintiff asserts a violation of his federal constitutional rights, "the Schenectady Police Department is an agency of the City of Schenectady and not an independent entity subject to suit, thus the proper party is the City of

Schenectady." <u>Dickson v. Schenectady Police Dep't</u>, No. 1:21-CV-0825 (LEK/DJS), 2022 WL 1091615, at *1, n.1 (N.D.N.Y. Apr. 12, 2022) (citing, <u>inter</u> <u>alia</u>, <u>Krug v. Cnty. of Rennselaer</u>, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) ("A city police department is not an independent, suable entity separate from the municipality in which the police department is organized.")), <u>appeal dismissed</u> (July 6, 2022); <u>see</u> <u>also</u> <u>Malloy v. Sopchak</u>, No. 1:18-CV-1460 (BKS/DJS), 2019 WL 1024354, at *4 (N.D.N.Y. Jan. 28, 2019) (citations omitted) ("Claims against the District Attorney's Office and the Albany Police Department, however, should be dismissed as they are not separate suable agencies . . . ."), <u>report and recommendation adopted</u>, 2019 WL 1025765 (N.D.N.Y. Mar. 4, 2019).  As the City of Schenectady Police Department is not a proper party to the suit, the undersigned recommends dismissing the federal claims against it with prejudice.  <u>See</u> <u>Malloy</u>, 2019 WL 1024354, at *4-5 (dismissing claim against Albany Police Department with prejudice); <u>Dos Santos v. Syracuse Police Dep't</u>, No. 5:22-CV-1102 (MAD/ATB), 2023 WL 3612842, at *3 (N.D.N.Y. May 24, 2023) (dismissing Syracuse Police Department from action with prejudice).

"It is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." <u>Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.</u>, 464 F.3d 255, 262 (2d Cir. 2006).  However, as Judge Kahn previously permitted pendent state law claims to proceed and plaintiff has realleged all of the facts from his original complaint in his Amended Complaint, the undersigned will recommend that the pendent state law claims against the City of Schenectady Police Department, proceed. <u>See</u> Dkt. No. 10 at 18, n.7.

### C. Statute of Limitations

The statute of limitations to bring a claim under 42 U.S.C. § 1983 is three years. See Barnes v. City of New York, 68 F.4th 123, 127 (2d Cir. 2023).  The three years begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Id. (quoting Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002)).  Plaintiff alleges that his rights were violated in the spring and summer of 2015. See Am. Compl. at 2-5.  Plaintiff was convicted in Saratoga and Schenectady Counties in 2016.  See People v. Horton, 102 N.Y.S.3d 761, 762 (2019); see also People v. Horton, 104 N.Y.S.3d 363, 365 (2019).  All of the allegations in plaintiff's Amended Complaint pertain to conduct that occurred leading up his convictions.  See generally Am. Compl.  As such, plaintiff had until 2018 or 2019 to bring this § 1983 complaint and his claims are likely time-barred.

"It is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law in appropriate circumstances."  Meyer v. Frank, 550 F.2d 726, 729 (2d Cir. 1977) (citations omitted).  "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'"  Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (quoting Doe v. Holy See (State of Vatican City), 793 N.Y.S.2d 565, 568 (App. Div. 2005)).  "[A] complaint [that] is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d),[6] may be based on a defense that appears on the face of the complaint."  Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995).  "A dismissal

---

[6] 28 U.S.C. § 1915 was amended on April 25, 1996, such that the applicable subsection is now § 1915(e).

. . . based on the statute of limitations is especially appropriate where . . . the injuries

. . . occurred . . . well outside the applicable three-year limitations period, there are no

applicable tolling provisions as a matter of law, and plaintiff has alleged no facts

indicating a continuous or ongoing violation of his constitutional rights." Id. at 54. "To

assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege

both the existence of an ongoing policy of . . . and some non-time-barred acts taken in

the furtherance of that policy.'" Shomo v. City of New York, 579 F.3d 176, 182 (2d Cir.

2009) (citation omitted). "'Due diligence on the part of the plaintiff in bringing [an]

action,' . . . is an essential element of equitable relief." Abbas, 480 F.3d at 642 (citation

omitted); see also Cherry v. Potter, No. 04-CV-1578 (AKH), 2005 WL 1085119, at *3

(S.D.N.Y. May 5, 2005) (quoting German v. Pena, 88 F. Supp. 2d 216, 219-22

(S.D.N.Y. 2000)) ("Equitable tolling is available 'only when the plaintiff's failure to meet a

deadline is the result of someone else's error.'"); Crane v. Shulkin, 293 F. Supp. 3d 352,

361 (W.D.N.Y. 2018).

It is well settled that, generally, "a plaintiff's pursuit of a state remedy . . . does

not toll the statute of limitations for filing a claim pursuant to section 1983." Abbas, 480

F.3d at 641 (citing Meyer, 550 F.2d at 730 ("Upon the conclusion of the state court

action, which included state and federal claims, appellees hardly could be said to have

been put on notice that an action in the federal court grounded on a different

constitutional theory would follow two years later."); Williams v. Walsh, 558 F.2d 667,

674-75 (2d Cir. 1977)).

First, plaintiff does not allege a continuing violation or a non-time barred act. See

generally Am. Compl.; see also Shomo, 579 F.3d at 182. Second, plaintiff states that

he was pursuing state court remedies until 2019, but that does not toll the statute of limitations.  See Am. Compl. at 1; see also Abbas, 480 F.3d at 641.  Third, plaintiff alleges that he "was told" that he had three years from the time of the last state court proceeding to bring a § 1983 action.  Am. Compl. at 1.  He does not allege who told him the information.  See id.  Although plaintiff's complaint was filed outside the three-year statute of limitations, at this early stage, because he alleges that he was told the wrong information, he is proceeding pro se, and Judge Kahn previously permitted claims to proceed, the undersigned will not recommend dismissing the complaint on statute of limitations grounds.

### D.  Right to counsel

"The Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'"  Krug v. Cnty. of Rennselaer, 559 F. Supp. 2d 223, 246 (N.D.N.Y. 2008) (quoting Texas v. Cobb, 532 U.S. 162, 167 (2001)); see also Dawkins v. Williams, 413 F. Supp. 2d 161, 169, n.7 (N.D.N.Y. 2006) ("The Sixth Amendment right to counsel (and to State-appointed counsel if the defendant is unable to afford counsel) is applicable to the States via the Fourteenth Amendment.").  "An individual's Sixth Amendment right to counsel attaches 'only at or after the time that adversary judicial proceedings have been initiated against him.'"  Krug, 559 F. Supp. 2d at 246 (quoting Kirby v. Illinois, 406 U.S. 682, 688 (1972)).  "[F]or purposes of the right to counsel, [] commencement [is attached] to the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment[.]"  Rothgery v. Gillespie Cnty., Tex., 554 U.S. 191, 198

(2008) (citation and quotation marks omitted). "Under New York law, 'a criminal proceeding, and the right to counsel, is initiated or commenced by the filing of *an accusatory instrument*.'" Krug, 559 F. Supp. 2d at 246 (quoting Brown v. Martin, 2004 WL 1774328, at *5 (W.D.N.Y. Aug. 6, 2004)); see also Berry v. Marchinkowski, 137 F. Supp. 3d 495, 531-32 (S.D.N.Y. 2015) (citations and quotation marks omitted) ("[I]f there has been no indictment, a criminal action is commenced by the filing of an accusatory instrument, to wit, a felony complaint for a felony charge, or a misdemeanor complaint or an information for a misdemeanor charge.").

Plaintiff alleges that a felony complaint was filed against him on April 25, 2015, and May 9, 2015. See Am. Compl. at 2. He states that defendants McCabe and DeLuca came to his house and took him in their car to the police station for questioning on May 21, 2015. See id. At this early stage, plaintiff has alleged enough facts to survive initial review as to a right to counsel claim and the undersigned recommends that such claims under the Sixth and Fourteenth Amendments and pendent state laws, proceed.

Plaintiff asserts that his Fifth and Sixth Amendment rights were violated because multiple court-appointed attorneys recused themselves due to conflicts of interest. See Am. Compl. at 6-7. As to the Fifth Amendment, it provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "[A] violation of the Fifth Amendment's right against self-incrimination occurs only when a compelled statement is offered at trial against the defendant." In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 177, 199 (2d Cir. 2008). Plaintiff has not alleged that any statements he made to the various court-appointed attorneys were

used against him at trial.  <u>See</u> <u>generally</u> Am. Compl.  Thus, he cannot state a Fifth

Amendment claim.  As to the Sixth Amendment, plaintiff's allegation that having three

different attorneys violates his Sixth Amendment right is meritless.  <u>See id.</u> at 6-7.  "The

right to counsel under the Sixth Amendment entails 'a correlative right to representation

that is free from conflicts of interest.'"  <u>United States v. Levy</u>, 25 F.3d 146, 152 (2d Cir.

1994) (quoting <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981)).  However, there is no

constitutional right to have only one attorney or a guarantee that assigned counsel will

not recuse themselves due to a conflict of interest.  The Supreme Court has made clear

that "an indigent defendant has no right to choose his counsel . . . ."  <u>Montejo v.</u>

<u>Louisiana</u>, 556 U.S. 778, 784 (2009) (citing <u>United States v. Gonzalez-Lopez</u>, 548 U.S.

140, 151 (2006)).  "Thus, defendants who rely on court-appointed counsel are entitled to

effective counsel, but they 'do not have a veto over who is appointed to defend them,

provided that appointed counsel's representation is adequate.'"  <u>Cantoni v. Leclair</u>, No.

12-CV-4353 (VEC/MHD), 2015 WL 518226, at *2 (S.D.N.Y. Feb. 9, 2015) (quoting

<u>Felder v. Goord</u>, 564 F. Supp. 2d 201, 220 (S.D.N.Y. 2008)).  To the extent plaintiff

alleges that he did not have an attorney for "almost two months[,]" he does not allege

that because of a lack of representation for those two months, he suffered any harm, or

that he remained unrepresented during any criminal proceedings.  Am. Compl. at 6.  As

plaintiff has not alleged that his various court-appointed attorneys were ineffective,

divulged statements that they were not supposed to, or caused any other harm, plaintiff

has failed to state a claim for relief sufficient to withstand initial review.  Thus, it is

recommended that his alleged Sixth Amendment claim be dismissed.  As plaintiff was

previously afforded an opportunity to amend his complaint, it is recommended that he

not be afforded an additional opportunity to do so.  See McFadden v. Lombardo, No. 9:19-CV-0803 (GTS/TWD), 2019 WL 4736217, at *6-7 (N.D.N.Y. Sept. 27, 2019) (collecting cases) ("[A]n opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. . . .  This rule applies even to pro se plaintiffs.").

### E.  Schenectady County

Plaintiff names Schenectady County, New York, in his case caption.  See Am. Compl. at 1.  "[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978)).  A plaintiff must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). "A 'policy' or 'custom' cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State."  Thomas v. Heid, No. 8:17-CV-1213 (MAD/DJS), 2017 WL 9673716, at *3 (N.D.N.Y. Dec. 6, 2017) (citation omitted), report and recommendation adopted, 2018 WL 1773130 (N.D.N.Y. Apr. 12, 2018).

Plaintiff's Amended Complaint does not include any allegations concerning a policy or custom created or maintained by Schenectady County.  See generally Am. Compl.  As such, the undersigned recommends dismissing plaintiff's complaint against Schenectady County insofar as he claims federal constitutional violations.[7]  See

---

[7] Judge Kahn previously ordered pendent state law claims against Schenectady County to proceed.  See Dkt. No. 10 at 18, n.7.  As plaintiff has realleged the same facts from his original complaint in his

Coleman v. Syracuse Police Dep't, No. 5:16-CV-00836 (LEK/TWD), 2016 WL 4411339, at *3 (N.D.N.Y. July 22, 2016) ("[The p]laintiff has failed to identify or allege any facts showing that the alleged refusal of the unidentified Syracuse police officers to take or investigate her reports was connected in any way to the existence of any municipal policy or custom of the City of Syracuse or the result of a failure to properly train, supervise, or hire the police officers."), report and recommendation adopted, 2016 WL 4273215 (N.D.N.Y. Aug. 12, 2016).  As plaintiff was previously given an opportunity to amend his Monell claim against Schenectady County and he has failed to allege a claim sufficient to withstand initial review, it is recommended that he not be permitted another opportunity to amend.  See Dkt. No. 7 at 18-19; Dkt. No. 10 at 19-20; see also McFadden, 2019 WL 4736217, at *6-7.

### F. Miranda Violation

In his original complaint, plaintiff alleged a violation of his "Miranda Rights."  Dkt. No. 1 at 1, 3.  The undersigned concluded that plaintiff had not raised a viable claim under § 1983, explaining that "a plaintiff cannot sustain a Section 1983 action on this basis because 'Miranda warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment.'"  Dkt. No. 7 at 13 (quoting Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir. 1995) (per curiam)).  Judge Kahn "modifie[d] the Report & Recommendation's Miranda finding by following the Dickerson holding that 'Miranda announced a constitutional rule . . . .'"  Dkt. No. 10 at 8-9 (quoting Dickerson v. United States, 530 U.S. 428, 444 (2000)).  Judge Kahn did not then allow a Miranda or Fifth Amendment claim to proceed beyond initial review.  See id. at 9, 20.  Rather,

---

Amended Complaint, the undersigned will recommend that the pendant state law claims against Schenectady County, proceed.

beyond the enumerated claims that were permitted to proceed, Judge Kahn dismissed all other claims without prejudice.  See id. at 20.  In his Amended Complaint, plaintiff alleges a violation of his "Miranda Rights."  Am. Compl. at 4, 5, 11.  As a Miranda claim has not previously been ordered to proceed, the undersigned will review whether plaintiff has raised a viable claim that can withstand initial review.  See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 219 (2d Cir. 2002) (citation omitted) ("[L]aw of the case [doctrine] is a judicially crafted policy that expresses the practice of courts generally to refuse to reopen what has been decided[.]").

       42 U.S.C. § 1983 states, "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"  The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In 1966, the Supreme Court of the United States, in Miranda v. Arizona, ruled that

       after a person has been taken into custody or otherwise deprived of his
       freedom of action in any significant way[,] . . . [p]rior to any questioning, the
       person must be warned that he has a right to remain silent, that any
       statement he does make may be used as evidence against him, and that
       he has a right to the presence of an attorney, either retained or appointed[.]

384 U.S. 436, 444 (1996).  "These procedural safeguards were intended 'to insure that the right against compulsory self-incrimination was protected.'"  United States v.

Medunjanin, 752 F.3d 576, 585 (2d Cir. 2014) (quoting Davis v. United States, 512 U.S. 452, 457 (1994)).

"In the wake of that decision, Congress enacted 18 U.S.C. § 3501, which in essence laid down a rule that the admissibility of [] statements [made during a custodial interrogation] should turn only on whether or not they were voluntarily made." Dickerson v. United States, 530 U.S. 428, 432 (2000). In ruling on the constitutionality of § 3501, the Supreme Court "h[e]ld that *Miranda*, being a constitutional decision of this Court, may not be in effect overruled by an Act of Congress, and we decline to overrule *Miranda* ourselves." Id. In modifying the undersigned's Report-Recommendation and Order, Judge Kahn twice quoted Dickerson to state its holding that "*Miranda* announced a constitutional rule . . . ." Dkt. No. 10 at 7-8 (quoting omitted). The undersigned respectfully notes that this articulation of Dickerson's holding omits the latter portion of the Supreme Court's conclusion. Dickerson's holding, in toto, states, "we conclude that Miranda announced a constitutional rule that Congress may not supersede legislatively." Dickerson, 530 U.S. at 444. Thus, Dickerson does not answer whether an alleged Miranda violation constitutes a constitutional violation sufficient to state a claim under 42 U.S.C. § 1983 and instead concludes only that Miranda states a "constitutionally based" rule that Congress cannot legislatively supersede. Dickerson, 530 U.S. at 429.

In June 2022, the Supreme Court decided a "case [that] presents the question whether a plaintiff may sue a police officer under Rev. Stat. § 1979, 42 U.S.C. § 1983, based on the allegedly improper admission of an 'un-*Mirandized*' statement in a criminal prosecution." Vega v. Tekoh, 142 S. Ct. 2095, 2099 (2022) (footnote omitted). The

Court explained that "*Miranda* did not hold that a violation of the rules it established necessarily constitute a Fifth Amendment violation." Id. at 2101. Rather, "[s]ince *Miranda*, the Court has repeatedly described the rules it adopted as 'prophylactic.'" Id. at 2102 (collecting cases). The Court then explicitly discussed Dickerson's consideration of Miranda. See id. at 2105-07. In doing so, the Court explained, "in the words of the *Dickerson* Court, the *Miranda* rules are 'constitutionally based' and have 'constitutional underpinnings.' But the obvious point of these formulations was to avoid saying that a *Miranda* violation is the same as a violation of the Fifth Amendment right." Id. at 2105 (quoting Dickerson, 530 U.S. at 440). The Court summarized,

> What all this boils down to is basically as follows. The *Miranda* rules are prophylactic rules that the Court found to be necessary to protect the Fifth Amendment right against compelled self-incrimination. In that sense, *Miranda* was a "constitutional decision" and it adopted a "constitutional rule" because the decision was based on the Court's judgment about what is required to safeguard that constitutional right. And when the Court adopts a constitutional prophylactic rule of this nature, *Dickerson* concluded, the rule has the status of a "La[w] of the United States" that is binding on the States under the Supremacy Clause (as *Miranda* implicitly held, since three of the four decisions it reversed came from state court, 384 U.S. at 491–494), and the rule cannot be altered by ordinary legislation.

Id. at 2106 (footnote omitted). "Subsequent cases confirm that *Dickerson* did not upend the Court's understanding of the *Miranda* rules as prophylactic." Id. Thus, the Court concluded, "a violation of *Miranda* does not necessarily constitute a violation of the Constitution, and therefore such a violation does not constitute 'the deprivation of [a] right . . . secured by the Constitution.'" Id. (quoting 42 U.S.C. § 1983).

The Vega Court did not stop there. It noted that its "conclusion does not necessarily dictate reversal because a § 1983 claim may also be based on 'the deprivation of any rights, privileges, or immunities secured by the . . . *laws*.'" Vega, 142

S. Ct. at 2106.  "It may [] be argued that the *Miranda* rules constitute federal 'law' and that an abridgment of those rules can therefore provide the ground for a § 1983 claim." Id.  The Court expounded, "'[a] judicially crafted' prophylactic rule should apply 'only where its benefits outweigh its costs,' and here, while the benefits of permitting the assertion of *Miranda* claims under § 1983 would be slight, the costs would be substantial."  Id. at 2107.  (quoting Maryland v. Shatzer, 559 U.S. 98, 106 (2010)).  The Court explained,

> *Miranda* rests on a pragmatic judgment about what is needed to stop the violation at trial of the Fifth Amendment right against compelled self-incrimination.  That prophylactic purpose is served by the suppression at trial of statements obtained in violation of *Miranda* and by the application of that decision in other recognized contexts.  Allowing the victim of a *Miranda* violation to sue a police officer for damages under § 1983 would have little additional deterrent value, and permitting such claims would cause many problems.

Id.  Thus, "'[t]he identification of a *Miranda* violation and its consequences . . . ought to be determined at trial.'  And except in unusual circumstances, the 'exclusion of unwarned statements' should be 'a complete and sufficient remedy.'"  Id. (citations omitted).  The Court concluded that "a violation of *Miranda* is not itself a violation of the Fifth Amendment, and [] we see no justification for expanding *Miranda* to confer a right to sue under § 1983[.]"  Id.

Applying Vega's holding and rationale, as the undersigned is bound to do, plaintiff cannot allege a Miranda violation as a cognizable and independent claim underlying a § 1983 action.  See Steven G. Calabresi, Equity and Hierarchy: Reflections on the Harris Execution, 102 YALE L.J. 255, 276, n.106 (1992) ("The hierarchical structure of Article III dictates that inferior courts faithfully apply the precedents of superior courts, just as the hierarchical structure of Article II requires executive officials

to follow presidential precedents."). Plaintiff's alleged <u>Miranda</u> claim should be dismissed with prejudice. <u>See, e.g.</u>, <u>Sherrod v. Mutarelli</u>, No. 20-CV-03312 (JS/SIL), 2023 WL 2481030, at *10 (E.D.N.Y.) (dismissing alleged <u>Miranda</u> violation under § 1983 because <u>Vega</u> foreclosed such an option), <u>report and recommendation adopted</u>, 2023 WL 2477814 (E.D.N.Y. Mar. 13, 2023), <u>vacated on other grounds</u> (Mar. 21, 2023), <u>and report and recommendation adopted</u>, 2023 WL 3114903 (E.D.N.Y. Apr. 27, 2023); <u>Piechowicz v. Lancaster Cent. Sch. Dist.</u>, No. 17-CV-845 (LJV/LGF), 2022 WL 17540648, at *8 (W.D.N.Y. Dec. 8, 2022) (same); <u>Stevens v. Vill. of Red Hook</u>, No. 20-CV-08152 (NSR), 2022 WL 11970629, at *8 (S.D.N.Y. Oct. 20, 2022) (same); <u>Price v. Peress</u>, No. 18-CV-4393 (ST), 2022 WL 4638148, at *14 (E.D.N.Y. Sept. 30, 2022) (same).

Importantly, "[i]t does not follow from *Vega* . . . that *Miranda* violations—much less the factual circumstances surrounding a defendant officer's failure to provide *Miranda* warnings—are necessarily irrelevant to a plaintiff's other § 1983 claims." <u>Martinez v. City of New York</u>, No. 16-CV-79 (NRM/CLP), 2022 WL 17090267, at *18 (E.D.N.Y. Nov. 18, 2022). Thus, the undersigned's conclusion that a <u>Miranda</u> violation is not an independent constitutional claim that can give rise to a § 1983 action does not foreclose plaintiff's ability to challenge defendants' conduct surrounding the alleged <u>Miranda</u> violation within his claims that proceed beyond initial review.

### G. Fifth Amendment Claim

"[A] § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby

21

obtained were used against the plaintiffs in a criminal proceeding." Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998) (citation omitted). "The key inquiry for Fifth Amendment purposes is whether the statement introduced in a judicial proceeding was obtained, not by failure to read a defendant the *Miranda* warnings, but by coercion—an inquiry determined by the totality of the circumstances[.]" Id. (citations omitted). "Even if it can be shown that a statement was obtained by coercion, there can be no Fifth Amendment violation until that statement is introduced against the defendant in a criminal proceeding." Id. (citations omitted); see also O'dell v. Bill, No. 9:13-CV-1275 (FJS/TWD), 2015 WL 710544, at *17 (N.D.N.Y. Feb. 18, 2015).

Plaintiff has not alleged that any statements he made to defendants McCabe or DeLuca were used against him in a criminal proceeding. See generally Am. Compl. Rather, plaintiff attaches to his complaint a decision from Judicial Hearing Officer Michael C. Eidens in which he granted plaintiff's "motion to suppress the oral statements made to Investigator DeLuca and Detective McCabe resulting from the custodial questioning on May 21, 2015." Dkt. No. 14-1 at 12. As plaintiff has not alleged that his statements were used against him in a criminal proceeding, he has not alleged a Fifth Amendment claim. See Levine v. New York State Police, No. 1:21-CV-503 (GLS/DJS), 2022 WL 4465588, at *10 (N.D.N.Y. Sept. 26, 2022) (internal citations omitted) ("Even if [the plaintiff] has plausibly alleged that [the defendant] attempted to coerce him into answering questions, 'about [his] arrest' after [the plaintiff] had indicated that he wished to invoked his right against self-incrimination, nowhere in the complaint does [the plaintiff] allege that he made a statement, let alone that the statement was used against him in a subsequent criminal proceeding[.] Accordingly, this cause of

action must be dismissed.").  Thus, it is recommended that such a claim be dismissed

without prejudice, but without leave to amend as plaintiff was previously afforded an

opportunity to amend his complaint.  See Coleman v. brokersXpress, LLC, 375 F.

App'x. 136, 137 (2d Cir. 2010) (summary order) ("Nor can we conclude that the district

court abused its discretion in denying [the pro se plaintiff] leave to amend.  The district

court afforded [the plaintiff] one opportunity to amend the complaint, and [the plaintiff]

made no specific showing as to how he would cure the defects that persisted if given a

second opportunity to amend.").

## H.  Brady Violation

Plaintiff alleges that the government "failed to disclose Brady material."  Am.

Compl. at 7.  "It is well-established by *Brady* and related authorities that in a criminal

prosecution, 'the government has an affirmative duty' under the Due Process Clause 'to

disclose favorable evidence known to it, even if no specific disclosure request is made

by the defense.'"  United States v. Hunter, 32 F.4th 22, 30 (2d Cir. 2022) (footnote

omitted); see Brady v. Maryland, 373 U.S. 83, 87 (1963).  "When police officers withhold

exculpatory or impeaching evidence from prosecutors, they may be held liable under

§ 1983 for violating the disclosure requirements of *Brady v. Maryland*, 373 U.S. 83

(1963)."  Bellamy v. City of New York, 914 F.3d 727, 751 (2d Cir. 2019); see Poventud

v. City of New York, 750 F.3d 121, 132 n.12 (2d Cir. 2014) (en banc) ("We reject out of

hand [the] defendants' contention that *Brady* violations cannot provide a basis for a

§ 1983 claim.").  "[T]he knowledge of a police officer may be attributable to the

prosecutor if the officer acted as an arm of the prosecution."  Wedra v. Thomas, 671

F.2d 713, 717, n.1 (2d Cir. 1982) (citation omitted).  However, "while a prosecutor has a

23

duty . . . to learn information when that information is possessed by others on the 'prosecution team,' undisclosed information that is not known to anyone on that team does not give rise to a *Brady* violation." Hunter, 32 F.4th at 36 (footnote omitted).

Plaintiff alleges that "the people," never disclosed certain evidence. Am. Compl. at 8. At the end of his Amended Complaint, he states that his rights were violated by a "District Attorney." Id. at 13. First, plaintiff does not name an attorney in his case caption or anywhere his Amended Complaint. See generally id. Second, "[t]t is well-settled that prosecutors sued under 42 U.S.C. § 1983 are entitled to absolute immunity from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process." Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001) (quotation marks omitted) (quoting Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996)). "The actions of a prosecutor are not covered by absolute immunity merely because they were performed by a prosecutor; rather, the question is whether the actions 'are part of a prosecutor's traditional functions.'" Id. (citation omitted). "'[T]he immunity attaches to [the prosecutor's] function, not to the manner in which he performed it.'" Id. (alteration in original) (quoting Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994)).

Courts have concluded that a prosecutor is immune from suit where a complaint alleges a Brady violation. See Hill v. City of New York, 45 F.3d 653, 662 (2d Cir. 1995) (extending immunity "[a]s to [the] failure to turn over *Brady* material" because "this omission occurred after the prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy function."); Brown v. Fallon, No. 1:21-CV-00641 (TJM/ML), 2022 WL 4103998, at *9 (N.D.N.Y. Sept. 8, 2022) ("To the extent [the

24

p]laintiff contends that [the prosecutor] violated [the p]laintiff's rights by failing to disclose exculpatory *Brady* material, her decisions regarding the disclosure of *Brady* material fall squarely within a traditional prosecutorial function during the judicial phase of the criminal process.  She therefore is entitled to absolute immunity with regard the failure to make these disclosures."); Strong v. New York, No. 1:19-CV-63 (MAD/CFH), 2019 WL 1763010, at *6 (N.D.N.Y. Apr. 22, 2019) (dismissing Brady claim against district attorney on absolutely immunity grounds), report and recommendation adopted, 2019 WL 2723372 (N.D.N.Y. July 1, 2019); Van Lewis v. Kyle, No. 5:18-CV-1128 (MAD/ATB), 2019 WL 643174, at *2 (N.D.N.Y. Feb. 15, 2019) (same).

Additionally, Heck bars plaintiff's complaint insofar as he alleges Brady violations because the allegations relate to plaintiff's conviction that proceeded to trial and which has not been overturned.  See Heck v. Humphrey, 512 U.S. 477 (1994).

> "*Heck* requires that 'in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the [challenged] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

Poventud, 750 F.3d at 124 (quoting Heck, 512 U.S. at 486-87).  "Not every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination."  Id. at 132.  However, "*Brady*-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the *Brady* violation occurred.  That should come as no surprise; the remedy for a *Brady* violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available to her."  Id. at 132-33 (citing Amaker v. Weiner, 179 F.3d

25

48, 51 (2d Cir. 1999) ("[The p]laintiff argues that his amended complaint includes at least one claim that does not implicate the invalidity of his conviction and therefore does not trigger the *Heck* rule: a claim that his right to meaningful court access has been denied by the withholding of exculpatory evidence. In substance, however, this claim sounds under *Brady* . . . and therefore does indeed call into question the validity of his conviction.  Accordingly, it is barred by *Heck*.")).

Plaintiff has not alleged that his convictions have been overturned.  <u>See generally</u> Am. Compl.; <u>see also</u> <u>Horton</u>, 102 N.Y.S.3d at 763; <u>Horton</u>, 104 N.Y.S.3d at 368; <u>Incarcerated Lookup</u>, Department of Corrections and Community Supervision, https://nysdoccslookup.doccs.ny.gov/ (last visited July 6, 2023).  Thus, his <u>Brady</u> claims are barred by <u>Heck</u>.  <u>See</u> <u>Poventud</u>, 750 F.3d at 138 (citation omitted) ("*Heck* requires that 'a § 1983 plaintiff must prove that the conviction or sentence has been . . . declared invalid by a state tribunal authorized to make such determination[.]'").

Nevertheless, as the unnamed District Attorney is entitled to absolute immunity for any alleged <u>Brady</u> violation, it is recommended that such claim be dismissed with prejudice.  <u>See</u> <u>Strong</u>, 2019 WL 1763010, at *6.

### I.  Sufficiency of Evidence

Plaintiff contends that he was convicted despite there being no physical evidence, DNA evidence, fingerprints, or mental or physical examination results presented at trial; and because witnesses made false statements.  <u>See</u> Am. Compl. at 8-9.  Plaintiff alleges that this "failed Due Process among other things[.]"  <u>Id.</u> at 9.

Plaintiff mentions due process, <u>see</u> Am. Compl. at 9, but "[t]o prevail [on a procedural due process claim], he must be able to demonstrate (1) that [d]efendants

26

deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process." Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017) (quoting U.S. CONST. amend. XIV, § 1). Plaintiff does not allege what process, if any, he pursued concerning the evidence presented at trial—whether he challenged the evidence in a motion to suppress, raised the issue on direct appeal, etc. See generally Am. Compl. He then fails to allege whether any of the process was deficient. See id. Thus, he has failed to state a due process claim sufficient to withstand initial review.

Regardless, his attempt to challenge the evidence or lack of evidence presented in his state criminal case is barred by Heck because it "necessarily impl[ies] the invalidity of his conviction[.]" Heck, 512 U.S. at 487; see also Warren v. Fischl, 674 F. App'x 71, 73 (2d Cir. 2017) (summary order) ("The very premise of Appellant's claims is that the defendants conspired to fabricate evidence and testimony against him and introduced such fabricated evidence and perjury at trial. Such claims, if proved, would demonstrate the invalidity of his conviction."); Zarro v. Spitzer, 274 F. App'x 31, 35 (2d Cir. 2008) (summary order) (affirming dismissal of claim that prejudicial statements were introduced at trial as barred by Heck); Mahon v. Comm'r of New York City Police Dep't, No. 15-CV-4120 (AJP), 2016 WL 1638746, at *4 (S.D.N.Y. Apr. 25, 2016) ("To the extent that [the plaintiff] challenges the evidentiary admissibility or sufficiency of the photocopies . . . that were presented as evidence against him at trial, such claim is barred by Heck . . . ."). Thus, it is recommended that this claim be dismissed without prejudice, but without leave to amend. There is no indication that plaintiff could state a valid claim because his convictions remain intact. See Webster v. Himmelbach, 271 F.

Supp. 3d 458, 471 (W.D.N.Y. 2017); Kearney v. Kozloski, No. 1:14-CV-1446

(GLS/DEP), 2016 WL 4690400, at *5 (N.D.N.Y. Sept. 7, 2016).

### J. Claims Against the Court and Jurors

Plaintiff alleges constitutional violations because of conduct by two jurors and

"the Judge." Am. Compl. at 12. He does not name the judge or the court. See id. He

complains that one juror had contact with the victim's family at lunch but does not

explain the degree of contact. See id. He states that another juror ate lunch with his

mother-in-law who was a "court attendant." Id. Plaintiff asserts that his attorney and the

trial court judge did nothing about these jurors' conduct but that there should have been

a mistrial. See id. Plaintiff asserts that the judge "never properly instructed the jury that

they could also convict[] on lesser offenses[,]" "let the District Attorney entered plaintiff's

texts and pictures into evidence, and "fail[ed] to dismiss the case even though the

District Attorney could not and didn't really prove what was in the indictment." Id. at 12-

13.

As to the jurors, plaintiff cannot bring a § 1983 action against them because they

are not state actors. See Fabrikant v. French, 691 F.3d 193, 206 (2d Cir. 2012) (citation

omitted) ("Because the United States Constitution regulates only the Government, not

private parties, a litigant claiming that his constitutional rights have been violated must

first establish that the challenged conduct constitutes state action."). There are no

allegations in plaintiff's Amended Complaint indicating that the juror's conduct could be

attributable to the state. See id. (citation and quotation marks omitted) ("[S]tate action

requires both an alleged constitutional deprivation caused by the exercise of some right

or privilege created by the State or by a rule of conduct imposed by the State or by a

person for whom the State is responsible, and that the party charged with the deprivation must be a person who may fairly be said to be a state actor."); see also Am. Compl.

As to the unnamed county court judge, "[i]t is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). Judicial "immunity is overcome in only two sets of circumstances." See id. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Id. (citation omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12 (citation omitted).

Insofar as plaintiff contends that the trial judge did not do anything about the jurors' conduct, "[t]he right of a defendant in a criminal prosecution to a trial 'by an impartial jury' is expressly guaranteed by the Sixth Amendment to the Constitution." United States v. Parse, 789 F.3d 83, 110 (2d Cir. 2015) (quoting U.S. CONST. amend. VI). "An impartial jury is one in which all of its members, not just most of them, are free of interest and bias." Id. at 111; see also Smith v. Graham, No. 17-CV-00379 (LJV/JJM), 2022 WL 3691232, at *14 (W.D.N.Y. July 25, 2022) (citation omitted) ("Although 'biased jurors may be dismissed from deliberations without offending the Constitution,' it is unclear 'precisely what it means for a juror to be biased. . . . However, we do know that a juror is biased if he [or she] is unwilling to follow the law.'"), report and recommendation adopted, 2022 WL 3684935 (W.D.N.Y. Aug. 25, 2022).

Plaintiff does not allege that he challenged the jurors conduct during his trial. See generally Am. Compl.

The judge's conduct that plaintiff raises—decisions concerning jurors, evidence, dismissal of the case, and jury instructions—fall squarely within his or her judicial functions. Plaintiff does not allege that the trial court judge was acting outside of or absent jurisdiction. See Am. Compl. at 12-13. Thus, the trial court judge is immune from plaintiff's § 1983 suit for damages. See Book v. Tobin, No. 3:04-CV-442 (JBA), 2005 WL 1981803, at *2 (D. Conn. Aug. 16, 2005) ("Quintessential judicial acts include presiding over trial proceedings, making evidentiary rulings, issuing jury instructions, and deciding motions, and remain protected by judicial immunity even if the decisions are erroneous, untimely, and in excess of the judge's authority."), aff'd, 263 F. App'x 174 (2d Cir. 2008) (summary order). As the county court judge is immune from suit and plaintiff cannot bring a § 1983 action against the jurors who are not state actors, it is recommended that the complaint be dismissed with prejudice as to any claims against them.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that plaintiff's Fourth, Sixth, and Fourteenth Amendment claims against the individual defendants; and pendent state law claims against the individual defendants, Schenectady County, and the Schenectady City Police Department be **PERMITTED TO PROCEED**; and it is further

**RECOMMENDED**, that any purported <u>Miranda</u> claim, the <u>Monell</u> claim against the City of Schenectady Police Department, and any purported claims against the county court and jurors be **DISMISSED with prejudice and without leave to amend**; and it is further

**RECOMMENDED,** that all other claims be **DISMISSED without prejudice and without leave to amend**; and it is

**ORDERED**, that the Clerk of the Court amend the case caption to add defendant Detective Joseph McCabe's first name; and it is further

**ORDERED**, that the Clerk of Court not issue service of the amended complaint; and it is further

**RECOMMENDED**, that should the District Judge reject the undersigned's recommendation concerning a denial of leave to amend, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint, and if plaintiff does not file a second amended complaint, (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in dismissal of the claims without further order by the Court, and (2) the matter be returned to the Magistrate Judge for service of the amended complaint for any claims that were permitted to proceed in the amended complaint; and it is further

**RECOMMENDED**, that should the District Judge adopt the Report-Recommendation and Order in its entirety, the Amended Complaint be returned to the Magistrate Judge for service of the amended complaint for any claims that were permitted to proceed; and it is

31

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[8]

Dated:  July 17, 2023
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[8] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).